APPEAL NO. 07-1435

## IN THE
## UNITED STATES DISTRICT COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**SPECIALIZED SEATING, INC.**

**Plaintiff-Counter Defendant/Appellee,**

**v.**

**GREENWICH INDUSTRIES, L.P.**
**d/b/a CLARIN,**

**Defendant-Counter Plaintiff/Appellant**

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
The Honorable James F. Holderman, Judge, Presiding
Case N0. 05 C 1197

## BRIEF OF APPELLEE
## SPECIALIZED SEATING, INC.

Anthony S. DiVincenzo
DiVincenzo Schoenfield Swartzman
33 North LaSalle Street, Suite 2900
Chicago, IL 60602
Telephone No. (312) 334-4800
Attorneys for Specialized Seating, Inc.

## ORAL ARGUMENT REQUESTED

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 07-1435

Short Caption: Specialized Seating, Inc. v. Greenwich Industries, L.P. d/b/a Clarin

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Specialized Seating Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiVincenzo Schoenfield Swartxman

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

n/a

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

Attorney's Signature: _____    Date: 4/19/10

Attorney's Printed Name: Anthony S. DiVincenzo

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [X]  No [ ]

Address: 33 North LaSalle Street

Chicago, Illinois 60602

Phone Number: 312/334-4800        Fax Number: 312/551-0322

E-Mail Address: adivincenzo@dsschicagolaw.com

rev. 01/08 AK

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                    **iii**

**JURISDICTIONAL STATEMENT**                                **1**

**STATEMENT OF ISSUES**                                     **1**

**SUMMARY OF ARGUMENT**

    **1**

**STANDARD OF REVIEW**                                      **2**

**ARGUMENT**                                                **2**

**I.    THE DISTRICT COURT PROPERLY
INVALIDATED CLARIN'S TRADEMARK
AND TRADE DRESS RIGHTS BECAUSE
THE DESIGN OF CLARIN'S FOLDING
CHAIR IS FUNCTIONAL**                                       **2**

**A.    The District Court Properly Balanced The Interests Of
Competition And Trademark/Trade Dress Protection.        4**

**B.    The District Court Gave Proper Consideration to
The Overall Design Of Clarin's Folding Chair In
Determining Its Functionality.**
    **7**

**C.    Clarin Distorts Prior Decisions Of This Court In
An Effort To Claim That The District Court
Misapplied The Law.**                                      **9**

**D.    The District Court Properly Considered The
Alleged Alternatives To The Clarin Design In Light Of
The Other Evidence Of Functionality**
    12

**II.    THE DISTRICT COURT PROPERLY FOUND THAT CLARIN HAD COMMITTED A FRAUD IN THE PROCUREMENT OF THE TRADEMARK COVERING THE CONFIGURATION OF ITS FOLDING CHAIR.**
15

**A.    The Appropriate Legal Standards Governing Proof Of Fraud.**                                                     16

**B.    The Evidence Establishing The Fraud.**

17

**C.    Clarin's Misrepresentations Were Material.**

19

**D.    Clarin Acted With Scienter And Intent.**                23

**CONCLUSION**                                                 24

# TABLE OF AUTHORITIES

## Cases

*Cerros v. Steel Techs., Inc.,*
288 F.3d 1040, 1044 (7th Cir. 2002).                                      2

*Eco Manufacturing LLC v. Honeywell International Inc.,*
357 F.3d 649 (7th Cir. 2003).                                           10

*Elmer v. ICC Fabricating Inc.,*
67 F.3d 1571, 1579-80 (Fed. Cir. 1995)                                   7

*Eppendorf Netherler Hinz GmbH v. Ritter GmbH,*
289 F.3d 351. 358 (5th Cir. 2002)                                        8

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
456 U.S. 844, 850, n. 10                                                10

*Keene Corp. v. Paraflex Industries, Inc.,*
653 F.2d 822, 827 (3rd Cir. 1981)                                       10

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,*
199 F.3d 1009, 1013 (9th Cir. 1999)                                      8

*Levenstein v. Salafsky,*
414 F.3d 767 (7th Cir. 2005).                                            2

*Metro Traffic Control v. Shadow Network, Inc.,*

104 F.3d 336, 340 (Fed. Cir. 1997)                          16

*Money Store v. Harriscorp Finance, Inc.*
689 F.2d 666, 670 (7th Cir. 1982)                           16

*Orient Exp. Trading v. Federated Dept. Stores,*
842 F.2d 650, 653 (2nd Cir. 1988).                   *in passim*

*Publications International, LTD., v. Landoll, Inc.,*
164 F.3d 337 (7th Cir. 1998)                         *in passim*

*Schwinn Bicycle Co. v. Ross Bicycles, Inc.,*
870 F.2d 1176, 1189 (7th Cir. 1989)                          9

*Scott Paper Co. v. Marcalus Co.,*
326 U.S. 249, 256 (1945).                                    5

*Textron, Inc. v. U.S. Int'l Trade Comm'n,*
753 F.2d 1019, 1025 (Fed. Cir. 1985)                         7

*The Antioch Company, v. Western Trimming Corporation,*
347 F.3d 150, (6th Cir. 2003)                                8

*Thomas v. GMAC,*
288 F.3d 305, 307 (7th Cir. 2002)                            2

*Thomas & Betts Corporation, v. Panduit Corp.,*
65 F.3d 654 (7th Cir. 1995)                                  5

*Thomas & Betts Corp. v. Panduit Corp.,*
138 F.3d 277, 288 (7th Cir. 1998)                           12

*Tie Tech, Inc. v. Kinedyne Corporation,*
296 F.3d 778 (9th Cir. 2002)                                 8

*Traffix Devices, Inc. v. Marketing Displays, Inc.,*
532 U.S. 23, 29 (2001)                               *In passim*

*Vaughan Mfg. Co. v. Brikam Int'l Inc.,*
824 F.2d 346, 350 (7th Cir. 1987)                            9

*Versa Products Co., Inc. v. Bifold Co. LTD,*
50 F.3d 189, 207 (3rd Cir. 1995)                             5

*W.T. Rogers Co., v. Keene,*
778 F.2d 334, 339-40 (7th Cir. 1985)                      9, 10

other authorities

J. Thomas McCarthy, *1McCarthy on Trademarks and
Unfair Competition*, §7:70 (4th Ed. 2008).                    8, 11

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee accepts the jurisdictional statement of appellant as complete and correct.

# STATEMENT OF ISSUES

1.      Did the District Court properly invalidate Clarin's registered trademark and trade dress because the configuration of Clarin's folding chair was functional?

2.      Did the District Court properly find that Clarin obtained the registration of its trademark through fraud?

# SUMMARY OF ARGUMENT

After a bench trial, the District Court entered judgment in favor of Specialized and invalidated the Trademark and Clarin's trade dress claims and found that Clarin had procured the issuance of the trademark through fraud.

The Court properly determined that Clarin's folding chair configuration was functional. The elements of the configuration were functional because they contributed to the quality and usefulness of the chair. The critical elements were disclosed in several expired utility patents. These patents disclosed that the overall shape and arrangement of the parts of the chair contributed to the functionality of the design.

The Court also properly determined that Clarin, through its agents, committed fraud in procuring the registration of the trademark. Clarin intentionally did not disclose all of the utility patents, despite the PTO's request for those patents. Clarin compounded the fraud by selectively disclosing the only patent that did not claim or disclose all of the

critical elements of its chair design. Further, Clarin submitted a false affidavit to the PTO claiming that the design of the back of the chair was merely ornamental and not functional, even though that back design was specifically engineered to improve the strength of the chair.

For these reasons, the judgment should be affirmed.

## STANDARD OF REVIEW

After a full bench trial, the district court's findings of fact may not be set aside unless they are clearly erroneous. *See, e.g., Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1044 (7th Cir. 2002). "This, as we have often vividly reminded parties, is a highly deferential standard." *Levenstein v. Salafsky*, 414 F.3d 767 (7th Cir. 2005). The Seventh Circuit reviews questions of law de novo; mixed questions of law or fact that do not involve constitutional rights are normally reviewed for clear error. *See, e.g., Thomas v. GMAC*, 288 F.3d 305, 307 (7th Cir. 2002). Accordingly, "[w]hen an appellate court finds no clear error in the district court's factual findings and no error in its legal conclusions, it will affirm the cancellation of a party's registered marks and the dismissal of the claims for infringement of those marks." *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650 (2d Cir. 1988).

## ARGUMENT

I.  **THE DISTRICT COURT PROPERLY INVALIDATED CLARIN'S TRADEMARK AND TRADE DRESS RIGHTS BECAUSE THE DESIGN OF CLARIN'S FOLDING CHAIR IS FUNCTIONAL.**

2

Plaintiff, Specialized Seating, Inc. ("Specialized") and Defendant, Greenwich Industries, L.P. d/b/a Clarin ("Clarin") compete in the sale of folding chairs. Clarin and Specialized both sold a folding chair that is commonly known as a double tube and channel x-frame chair.[1] Clarin has sold double tube and channel x-frame chairs, which have been the subject of several patents, since the 1920's. (A.3)[2]. Specialized started in business in 1997. (A.3).

On January 13, 2004, Clarin obtained U.S. Trademark Registration No. 2,803,875. (A.36). The written description of the trademark is:

> The mark consists of a configuration of a folding chair containing an X-frame profile, a flat channel flanked on each side by rolled edges around the perimeter of the chair, two cross bars with a flat channel and rolled edges at the back bottom of the chair, one cross bar with a flat channel and rolled edges on the front bottom, protruding feet, and a back support, the outer edges of which slant inward.

(A.36).

This litigation challenged the validity of that Trademark and Clarin's asserted common law trade dress rights on grounds that its folding chair design was functional.

---

[1] An x-frame folding chair is constructed so that its legs intersect below the seat forming an "x". (A.37 par. 6). A double tube and channel refers to the material used to form the frame and consists of a flattened piece of steel which has its edges rolled over to form what appear to be two tubes with a flat channel in between. (A.37 par. 7).

[2] All citations to (A. __) are references to the Appendix to Brief of Appellant.

3

During a multi-day bench trial, the District Court was presented with extensive testimony and documentary evidence addressing the functionality of Clarin's double tube and channel x-frame chair design. After hearing that evidence and weighing the credibility of the witnesses, the District Court entered judgment in favor of Specialized and invalidated the Trademark and Clarin's trade dress claims and found that Clarin had procured the issuance of the trademark through fraud.

The District Court's reasoned judgment that Clarin's trade dress is functional was based upon a proper application of the law to the facts of this case. In an effort to attack that judgment, Clarin distorts the reasoning of the District Court to concoct the claim that the Court applied the wrong legal standard in determining the functionality of the folding chair design that constitutes Clarin's trade dress. To the contrary, as explained below, the District Court properly interpreted and applied the case law governing the determination of functionality.

## A. The District Court Properly Balanced The Interests Of Competition And Trademark/Trade Dress Protection.

In this case, the District Court was faced with the question of balancing the rights of the Plaintiff to compete with Clarin in the sale of folding chairs, even through copying the functional elements of Clarin's design, with the rights of Clarin to protect any rights it had in its chair design. The tension between these interests has been at the heart of litigation for years. The Supreme Court recognized that "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). As the Supreme Court stated, "copying is not always discouraged or disfavored

4

by the laws which preserve our competitive economy." *id.*, at 29. The Supreme Court had much earlier determined that a patent holder may not extend the legal monopoly afforded by a patent by using the trademark law to register any trademark based on "any descriptive matter appearing in the specifications, drawings or claims of the expired patent, whether or not such matter describes essential elements of the invention or claims." *Scott Paper Co. v. Marcalus Co.*, 326 U.S. 249, 256 (1945).

The Courts should not restrict the right to copy by removing products from the public domain through the liberal recognition of trade dress rights in product configurations. While features of a product may serve to signify its source, those features are part of the product and may be valued by consumers not merely as signifiers of source. "When competitors are barred from duplicating features whose value to consumers is intrinsic and not exclusively as a signifier of source, competition is unduly hindered." *Thomas & Betts Corporation, v. Panduit Corp.*, 65 F.3d 654 (7th Cir. 1995). After all, the Lanham Act provides protection for a product configuration only when that configuration is primarily the identifier of the origin of the product. The court in *Versa Products Co., Inc. v. Bifold Co. LTD,* 50 F.3d 189, 207 (3rd Cir. 1995) explained:

> One primary purpose of the Lanham Act is to foster fair competition. Indeed, we have said that prevention of unfair competition is the doctrinal basis for trade dress infringement suits under the Act. Where product configurations are concerned, we must be especially wary of undermining competition. Competitors have broad rights to copy successful product designs when those designs are not protected by (utility or design) patents. It is not unfair competition for someone to trade off the

good will of a *product*, it is only unfair to deceive consumers as to the origin of one's goods and thereby trade off the good will of a prior *producer*. (Citations omitted).

In *Publications International, LTD., v. Landoll, Inc.*, 164 F.3d 337 (7th Cir. 1998) this Court addressed the need for such a balance. In *Publications International*, the Court was faced with the issue of whether a design for a cookbook, which included several clearly functional features, could nonetheless be protected trade dress. This Court recognized:

> On the other hand, a seller should not be allowed to obtain in the name of trade dress a monopoly over the elements of a product's appearance that are either not associated with a particular producer or that have value to consumers that is independent of identification. In the lingo of unfair competition, elements of the latter type – elements whose value is not merely signification- are a product's functional features…

In affirming the denial of trade dress protection, this Court observed that every producer of a cookbook faces the same type of concerns, such as the difficulty of laying a book flat. Consequently, this Court reasoned that it was not surprising that a competing publisher would find it optimal, for reasons unrelated to attempting to confuse consumers, to use the same combination of functional features with the result being a similar looking book.

In this case, the District Court properly balanced these competing interests by denying protection for Clarin's folding chair configuration because that configuration

6

was functional. The trial court, applying similar reasoning to this Court's analysis in
*Publications International,* determined that Specialized's chairs looked similar for the
simple reason that "there would be no other appearance that Specialized's chairs could
take and still make use of all the same functional features as are in the Clarin-asserted
trade dress and the depicted folding chair of Clarin's registered trademark." (A.27). As
the District Court concluded, "Giving Clarin trade dress or trademark protection would
provide Clarin with a monopoly unlimited by time on its chair's appearance which is
comprised entirely of functional features that could not be engineered to look any other
way." (A.28).   In so ruling, the District Court properly recognized Specialized's right to
copy all of the functional features of the Clarin product design.

### B. The District Court Gave Proper Consideration to The Overall Design Of Clarin's Folding Chair In Determining Its Functionality.

Because Clarin has admitted that all of the product design features specified in the
written description of the trademark are functional because they add to the quality of the
folding chair, Clarin is reduced to arguing that the assemblage of these functional parts
into a whole somehow creates a non-functional overall design. Clarin further argues that
the District Court failed to properly analyze that overall design in determining whether
the design is functional. Clarin's argument misreads the decision below.

The District Court clearly considered the overall design of Clarin's chair in
determining functionality. (A.26-28). Moreover, the claim of overall design is not a
magic talisman creating protection for functional designs. While the Court should

consider the overall design of the chair, when all of the claimed elements of a trademark

or trade dress are functional, the combination of individually functional features does not

result in an overall nonfunctional design. *Elmer v. ICC Fabricating Inc.*, 67 F.3d 1571,

1579-80 (Fed. Cir. 1995). The Court in *Textron, Inc. v. U.S. Int'l Trade Comm'n,* 753

F.2d 1019, 1025 (Fed. Cir. 1985) held that the overall design can only be recognized as a

trademark if "the entire design" is "arbitrary or non *de jure* functional". The Ninth circuit

explained that "it is semantic trickery to say that there is some sort of separate 'overall

appearance' which is non-functional" when even the arrangement of the parts is for a

utilitarian purpose. *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009,

1013 (9th Cir. 1999). The Court emphasized that such an argument would so restrict the

right to copy as to make it meaningless. *See also Tie Tech, Inc. v. Kinedyne Corporation*,

296 F.3d 778 (9th Cir. 2002).

 The proper analysis of a product's functionality begins with" the true question: is

the article in this particular shape for utilitarian reasons?" . J. Thomas McCarthy,

*1McCarthy on Trademarks and Unfair Competition*, §7:70 (4th Ed. 2008).  In answering

that question, it is proper for the Court to consider the specific features of the design. This

Court did just that in *Publications International.* More specifically, the Court in

*Eppendorf Netherler Hinz GmbH v. Ritter GmbH*, 289 F.3d 351. 358 (5th Cir. 2002) held

that trade dress protection was unwarranted where the eight design elements of a

disposable pipette tip were functional and essential to the overall operation of the

product.

 Admittedly, a mere review of the individual elements of the trade dress may not

end the inquiry. As the Supreme Court noted in *TrafFix Devices, supra* at 34, the

assemblage of functional parts in an arbitrary, fanciful, or distinctive manner may allow trade dress protection. The Court in *The Antioch Company, v. Western Trimming Corporation*, 347 F.3d 150, (6th Cir. 2003) held "where individual functional components are combined in a nonarbitrary manner to perform an overall function, the producer cannot claim that the overall trade dress is nonfunctional."

The District Court fully considered the claim of an overall nonfunctional design and properly rejected it. The Court held, consistent with *Publications International* that there was no other way to construct a folding chair using the functional features of Clarin's chair other than the way Clarin did it. There was simply no arbitrary element in Clarin's design. In such cases, trademark and trade dress protection is unavailable.

## C. Clarin Distorts Prior Decisions Of This Court In An Effort To Claim That The District Court Misapplied The Law.

Defendant goes to great length to argue that the District Court applied the wrong legal standard in determining whether the design of Clarin's folding chair, as depicted in the trademark, is functional. According to Clarin, the lower court failed to properly apply what it terms the "superior design" standard. Citing to cases such as *Vaughan Mfg. Co. v. Brikam Int'l Inc.*, 824 F.2d 346, 350 (7th Cir. 1987) and *W.T. Rogers Co., v. Keene*, 778 F.2d 334, 339-40 (7th Cir. 1985), Clarin claims this standard provides that if there are alternative designs that perform the same *de facto* purpose and function equally as well as the design for which protection is sought, then a product's configuration is protectable as trade dress. According to Clarin, a product design is functional only if it is superior to most or all other designs. In other words, Clarin argues that the existence of any feasible alternative precludes a finding of functionality.

9

First, this position misstates the rulings of this Court. This Court, consistent with other jurisdictions, has never elevated the existence of alternative designs to the dispositive factor in determining functionality. Indeed, to establish functionality of a feature, the feature need not be shown to be the best design. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989). All that must be shown is that the design is one of a few superior designs for its purpose. *W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334,340 (7th Cir. 1985). Similarly, in *Keene Corp. v. Paraflex Industries, Inc.*, 653 F.2d 822, 827 (3rd Cir. 1981) the court found that functionality existed where the shape of a outdoor wall-mounted luminaire was one of twelve or fifteen on the market.

Further, Clarin's so-called "superior design" test ignores and is contrary to the most recent decisions of the Supreme Court on the issue of functionality. The Supreme Court in *TrafFix Devices, Inc., v. Mktg Displays, Inc.* 532 U.S. 23, 35 (2001) unequivocally adopted "the rule that functional features may not be the subject of trade dress protection". A feature is functional if it is essential to the use or purpose of the product or when it affects the cost or quality of the product. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850, n. 10 and *TrafFix Devices*, *supra* at 32-33. Critically, the *TrafFix Devices* Court noted that once a product is deemed functional under the *Inwood* formulation, there is no need to speculate about the existence of other possible designs. *TrafFix Devices*, *supra* at 33. Further, as this Court has recognized, *TrafFix Devices* rejected any competitive necessity test for functionality. *Eco Manufacturing LLC v. Honeywell International Inc.*, 357 F.3d 649 (7th Cir. 2003). A party challenging trade dress as functional need not prove that it was unable to effectively compete without use of the design. In light of this precedent, Clarin is simply incorrect

when it suggests that a product design is nonfunctional if there are alternative designs that function equally as well.[3]

Defendant also argues that the District Court created a new "functional components" standard by holding, among other things, that "a product (or a depiction of a product) that cannot appear any other way and still make use of all of the functional components is not eligible for trademark protection." (A.27). According to Clarin this standard deviates from *Publications International* because in that case the Court stated in that case that an overall design could be protectable "unless it was the only way the product could look, consistent with its performing each of the product's functions optimally." *Publications International, supra* at 342. This argument is mere semantics and points to a distinction without a difference.

First, in *Publications International,* this Court went on to explain that because of the common concerns faced by other publishers of cookbooks it would not be surprising that another publisher would "use the very combination of features that PIL claims compose its trade dress- large pages, an oilcloth cover, gilded edge pages." *Publications International, supra* at 343. Thus, this Court itself focused on the features and not the function.

---

[3] Plaintiff is not arguing that in light of *TrafFix Devices* that consideration of alternatives is not appropriate in the totality of an analysis of functionality. Because the District Court clearly considered the alternatives, there is no need for this Court to address this issue at this time.

Second, the District Court's focus was on Clarin's own product and whether the overall design was functional. If the overall look of the chair was the result of the use of the functional elements, then that overall design was a utilitarian design of a utilitarian object. That is a direct answer to the true question noted in *1McCarthy on Trademarks and Unfair Competition*, §7:70- is it in the shape that it is in for utilitarian reasons. Moreover, it cannot be said that Clarin's design was arbitrary in any way. The purpose of Clarin's overall design was to provide the functional advantage of using all of the functions of each element of the design. Such overall designs are not subject to protection as trade dress. *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 288 (7th Cir. 1998).

Lastly, the District Court's approach is the only way to permit Plaintiff to do what it had the right to do, that is copy all of the functional elements. Unless Plaintiff was entitled to copy all of the functional elements, it would be forced to choose between functional advantages or disadvantages of different designs. Trademark and trade dress law does not impose that requirement on a party. *Tie Tech, supra.*

## D. The District Court Properly Considered The Alleged Alternatives To The Clarin Design In Light Of The Other Evidence Of Functionality

The shell game being played by Defendant is most apparent when it discusses its claim that the evidence established that there are numerous alternatives to its double tube and channel x-frame design that serve the same function as Clarin's chair and do it without looking like Clarin's chair. At no time does Clarin clearly identify that function. Certainly, there are other styles of folding chairs. The real question is whether those

styles possess all of the function advantages of a double tube and channel x-frame folding chair. Defendant's brief simply does not address that issue. Defendant would rather speak in generalities, the same tactic it used at trial. This Court should reject it just as the District Court did.

It must be noted, as the District did, that Counsel for Defendant conceded at trial that all of the features that made up the trademark application were functional. (A.11). This critical concession by Defendant is not disputed on this appeal. Nor is the fact that each of the elements of the trade dress is claimed or disclosed in an expired utility patent, with the exception of the B-back slanted frame. However, the Court also considered at length the evidence that the B-back design was utilitarian. (A. 24-26). The evidence demonstrated that the shape of the B-back chair was configured to add strength without loss of the flexibility of the double tube and channel design. (A.14-15).

The record also supports the following functional advantages of Clarin's design over the alleged alternatives, all of which, among others, were considered by the District Court:

1. As claimed in Clarin's expired utility patent 1,943,058 as a safety feature, Clarin's X-frame folding chairs automatically collapse upon being pushed over forward or backward, while y-frame chairs, such as those of Samsonite, Virco, National Public Seating and Kruger International shown on pages 12-13 of Appellant's Brief, do not collapse in this fashion (A.7);

2. As claimed in Clarin's expired utility patent 1,600,248, the x-frame design allowed the chair to fold flat with its back legs folding within the front legs, while y-frame chairs, such as those of Samsonite, Virco, National Public

Seating and Kruger International shown on pages 12-13 of Appellant's Brief, do not fold in this fashion (A.6);

3.  As claimed in  Clarin's expired utility patent 2,137,803, the protruding foot does not mar or dent floors; (A.7-8);

4.  As claimed in  Clarin's expired utility patent  3,127,218, the ganging device which allowed Clarin chairs to be connected to each other was affixed in the channel of the frame so as to be unobtrusive and not interfere with the closing of the chair while tubular chairs such as those on  pages 12-13 of Appellant's Brief can not (A.8);

5.  X-frame folding chairs have the added safety feature of not collapsing when a person would stand on the front or back edge of the chair, while y-frame chairs, such as those of Samsonite, Virco, National Public Seating and Kruger International shown on pages 12-13 of Appellant's Brief, does not (A.12);

6.  Double tube and channel chairs because of their ganging devices do not add width to the chair thereby maximizing the number of chairs that can be placed in an arena or stored in a limited area (A. 12);

7.  Double tube and channel chairs are flexible, remember their original shape after use and insure level seating on uneven surfaces, while tubular chairs do not have these attributes (A.12-13)

8.  An x-frame chair permits accelerated opening and closing; (A.13);

9.  The back panel of the Clarin chair is designed to provide lumbar support (A.14);

10. The B-back design permits the loss seating capacity by permitting folding arms to placed between the chairs with only a minimal increase in width (A. 12);

11. The B-back increased the strength of the chair and eliminated a safety risk without having to sacrifice the double tube and channels greater flexibility (A.15).

These advantages were claimed by Clarin in its advertising. (A272-276).

Clarin also points to the testimony of its expert, Dr. DeSantiago, that there were other designs for chairs. However, as the District Court noted and Clarin again does not dispute, Dr. DeSantiago did not test for all aspects of a folding chair's functionality. (A.15-16). For example, he did not test for flexibility, comfort, collapseability, or space capacity. (A.16). Dr. Santiago tested mainly for strength. (A.16). His tests revealed that the B-back design was stronger than the A-back. (A.16). He further admitted that the design of the back of a folding chair was not merely incidental or ornamental because it influences the strength of a chair. (A. 16).

In light of this evidence and the Court's discussion of it, it is disingenuous for Defendant to argue that the District Court did not consider the existence of alternative designs. It is clear that the Court rejected the claim that Specialized could produce a functionally equal chair without using all of the elements identified in the trademark.

That conclusion is completely supported by the failure of Clarin to identify any single alternative design that possesses all of the functional advantages of the x-frame double tube and channel B-back design. If Specialized developed a alternative design that did not use the x-frame, it would lose the advantage of collapseability, ease of opening

15

and closing, maximization of storage and seating capacity. On the other hand, if Specialized decided to use a tubular frame rather than the double tube and channel frame, then it might gain some strength, but at the expense flexibility and seating capacity and weight. The law does not require Specialized to make those choices.

## II.    THE DISTRICT COURT PROPERLY FOUND THAT CLARIN HAD COMMITTED A FRAUD IN THE PROCUREMENT OF THE TRADEMARK COVERING THE CONFIGURATION OF ITS FOLDING CHAIR.

After hearing all of the evidence and being able to consider the credibility of the witnesses, the District Court found that Specialized had met its burden of proof and established that Clarin had committed a fraud in procuring the Trademark covering the configuration of its folding chair. Clarin concedes, as it must, that it failed to disclose three patents that it owned which claimed or described in detail the functionality of various elements of the trade dress that it sought to have registered as a trademark. This failure is even more egregious in this case because the PTO specifically requested that information twice during its analysis of the functionality of the mark. In fact, in a last ditch attempt to obtain registration, Clarin submitted a false affidavit to the PTO, which concealed the functionality of the B-back design.

In light of that evidence, the Court concluded that "Specialized has shown by clear and convincing evidence, under all the facts and circumstances of the case, that Clarin deliberately made fraudulent representations to the PTO that were material to Clarin's obtaining the issuance of its registered trademark." (A.35). The lower court's finding on this question of fact cannot be set aside absent a showing that it was clear

16

error. *Orient Exp. Trading v. Federated Dept. Stores*, 842 F.2d 650, 653 (2nd Cir. 1988). Deference must be given to the factual findings of the District Court. *id.* Because the record provides sufficient support for the finding of fraud, the judgment below should be affirmed.

## A. The Appropriate Legal Standards Governing Proof Of Fraud.

Fraud must be shown by clear and convincing evidence in order to establish that a trademark should be invalidated or canceled. *Money Store v. Harriscorp Finance, Inc.* 689 F.2d 666, 670 (7th Cir. 1982) and 15 U.S.C. § 1064. Fraud will be deemed to exist when there is a deliberate attempt to mislead the PTO into registering the mark. *Id.* Fraud occurs when an applicant knowingly makes false, material misrepresentations of fact in connection with an application. *Metro Traffic Control v. Shadow Network, Inc.,* 104 F.3d 336, 340 (Fed. Cir. 1997). Materiality means that the misstatement of fact would have affected the PTO's action on the application. *Orient Exp. Trading v. Federated Dept. Stores*, 842 F.2d 650, 653 (2nd Cir. 1988). Application of these standards confirms that the District Court properly concluded that Clarin obtained registration of its trademark through fraud.

## B. The Evidence Establishing The Fraud.

The District Court set forth in detail the history of Clarin's attempts to register its trademark. That story begins with Greenwich Industries acquisition of Clarin assets and intellectual property in July, 1993. (A.4). Prior to the acquisition Harvey Hergott and his son, Alfred Hergott were employed by Clarin. (A.4). As part of the acquisition, Harvey Hergott agreed to be a vice president and partner in the new Clarin. (A.4).

17

In later 1993, Harvey and Alfred Hergott left Clarin and started a competing company, AOH International. (A.4). AOH sold both x-frame and y-frame folding chairs. (A.4). The x-frame chairs were manufactured in Taiwan. (A.4).

Clarin sued Harvey Hergott and AOH in Illinois alleging various business claims including breach of fiduciary duty. (A.4). A settlement was reached in September 1996. (A.4). That settlement provided that Harvey and Alfred Hergott would not compete in the x-frame double tube and channel market for five years. (A.4). Harvey and Alfred Hergott fully complied with the settlement agreement. (A.4).

In 1999, Alfred Hergott formed Specialized Seating. In 2002, after the five year covenant not to compete had expired, Specialized began selling x-frame chairs. (A.5). Although the chairs were x-frame double tube and channel folding chairs with a back similar to Clarin's B-back, the chairs differed from Clarin's asserted trade dress and the depiction in Clarin's registered trademark. (A.5). These differences included different leg braces, different seat frames, and different ganging brackets. (A.5). It is interesting to note that Clarin does not sell any chair that incorporates the elements of its asserted trade dress or trademark. (A.5).

In May 1999, shortly before the five year covenant not to compete was to expire, Clarin first filed for a trademark on the chair it had been selling for years. (A.8). Clarin's application submitted only a depiction of a folding chair and a written description of "configuration of a folding chair". (A.8). The PTO refused the application on the grounds that the requested mark appeared functional and was not inherently distinctive. (A.9). The PTO requested that Clarin provide information about whether the proposed mark was the subject of any patent and ordered Clarin to provide all information related to the patent.

(A.9).

In April 2000, Clarin responded to the refusal. (A.9). In the response Clarin did not provide the PTO with all information concerning its patents. (A.9). Clarin only disclosed the '058 patent. (A.9). In its response, Clarin emphasized that the '058 patent did not cover the distinctive elements of the chair mark. (A.9). Further, Clarin emphasized that the '058 patent states that the back and legs of the chair may be of any type. (A.9). Specifically,  the response states that Clarin is seeking to register a configuration of a chair with a double tube and channel x-frame with double horizontal supports on the rear legs. (A.9). No mention of the B-back design was made. (A.9). Clarin emphasized that the '058 patent did not cover that configuration. (A.9).

Critically, the response did not inform the PTO of Clarin's other patents involving the elements of the chair configuration that it was trying to trademark. (A.9). These patents, including patent 1,600,248, patent 2,137,803, and patent 3,127,218,  specifically disclosed the use and functionality of the double tube and channel frame and the leg supports. (A.6-8).

In January, 2001, the PTO again refused the application on grounds of functionality and lack of inherent distinctiveness. (A.10). The PTO also posed specific interrogatories to be answered by Clarin. (A.10).

In July 2001, Clarin responded to the office action and answered the interrogatories. (A.10). The interrogatory answers and the response denied that the chair design was *de jure* function. (A.178). Yet, Clarin continued in its failure to provide the PTO with any information about the other patents. (A.10). In January 2002, the PTO issued a final refusal on the grounds that the mark appeared to be *de facto* functional and

19

the mark was not inherently distinctive.

In 2002, Clarin filed suit against Specialized alleging common law trade dress infringement. (A.6). This suit was dismissed with prejudice with leave to reinstate. However, Clarin never reinstated this case. (A.6).

In July 2002, Clarin submitted its Request for Reconsideration. (A.10). In support of this request, Clarin submitted the Supplemental Declaration of William Peterson, Clarin's then-President. Not only did that Declaration utterly fail to disclose the functionality of the B-back chair design, it affirmatively misstated the purpose of the B Back design as a slight modernization of the chair, while, in reality, the B Back was designed to solve a significant and dangerous structural defect in Clarin's previous chairs. (A. 11, 14, and 17). Clarin continued in its failure to disclose further information concerning the other patents. (A.11). Clarin's request succeeded and the Trademark registration issued in January 2004. (A.11). Clarin used that registration to have shipments of chairs from Taiwan to Specialized seized by U.S. Customs as counterfeits. (A.11).

## C. Clarin's Misrepresentations Were Material.

Defendant argues that the District Court committed clear error when it found the above described misrepresentations to be material. Initially, according to Defendant, the Court failed to find that the mark would not have been registered absent the fraud. Once again the Defendant mischaracterizes the finding of the District Court.

The District Court specifically found that the examiner would have found the expired patents relevant to the trademark determination (A.32); that the undisclosed evidence of the B-back's functional purpose "caused the PTO to believe that the B-back

design was purely ornamental and without function"(A.33); and that Clarin's misrepresentations "were material to Clarin's obtaining the issuance of its registered trademark." (A.35). In light of these specific statements that the misrepresentations impacted upon the PTO's decision to register the trademark, it is specious for Clarin to argue that the District Court misapplied the standard of materiality.

Further, Defendant argues that the three undisclosed Clarin patents and Mr. Peterson's false affidavit were not material. Defendant suggests four reasons for this argument. First, Defendant argues that the District Court's flawed application of the standard of functionality infects its ruling on materiality. Defendant persists in its position that only evidence of the functionality of the overall configuration could be material. This argument should be rejected for the same reasons addressed above.

Further, it is disingenuous for Defendant to make this argument when it argued before the PTO, in response to the PTO's specific interrogatories, that each of the elements was not functional. (A. 169 and A. 174-178).  It is not surprising that the PTO would seek to obtain information concerning the elements of the design because the examination guidelines explain that "it is sometimes helpful to analyze the design from the standpoint of its various features". (A.270). If the PTO found the information concerning the specific elements to be relevant, Defendant can not now be allowed to argue that the PTO was wrong.  Incredibly, Defendant even argued in the PTO that the double tube and channel "serves primarily as a source signifier". (A.157). This argument could only be made if Clarin withheld any reference to the '248 Patent, which disclosed in the specification the functionality of the double tube and channel, and the '218 Patent, which specifically claimed the functionality of the double tube and channel design. (A6

and A.8).

Most critically, Clarin sought to distinguish the only disclosed patent, the '058 Patent, by arguing that "[i]t did not cover the distinctive design elements that make up the Clarin Chair mark, such as the double-tube and channel." (A.157). Clarin, along the same lines, argued that the '058 patent stated that there may be a back "of any desired type", a frame "of any desired type" and rear legs "of any desired type".  Further, pushing the point before the PTO, Clarin argued that "[w]hat Applicant seeks to register-the specific configuration of the chair, with the specific double-tube frame, the double horizontal supports on the rear legs and the "X" shape formed by the intersection of the chair legs-is not covered by the '058 patent". (A.158). Yet, the undisclosed '248 Patent makes clear that that configuration is functional. It states, as noted by the District Court, that the overall design of the double tube and channel x-frame chair "is so shaped and arranged as to provide a maximum of strength with a minimum of material." (A.247 at lines 5-7). The proceedings before the PTO make clear that the undisclosed patents were material.

Second, Defendant argues that under the examination guidelines in effect at the time of the application rendered the undisclosed patents immaterial.  According to Defendant any element not in the claims of the patent are merely incidental or arbitrary elements. This argument flies in the face of the guidelines. While they say that if the features of a design are referenced in the patent "but only as arbitrary or incidental features", the probative value of the patent is reduced. Nowhere does it say that the patents are immaterial. Further, the issue is whether the patent discloses the feature as arbitrary.

Defendant's argument is contradicted by their own expert, David Kera, who

admitted that the examination guidelines do not limit disclosure to patents which claim an element of the requested trademark. (A.17-18). He admitted that patents that involve the configuration or similar configuration of features should be disclosed. (A.18). The evidence in this case shows that the undisclosed patents either claimed the features, such as the double tube and channel in the '218 Patent claims (A.256 at lines 32-34) and the foot in the claims of the '803 Patent (A253), or involved the features of the configuration of Clarin's chair, as explained above.

Third, Defendant claims that patents would have been redundant because Clarin did disclose the functionality of the features of its chair in advertisements which it provided to the PTO. Critically, the advertising materials utterly fail to address the functionality of the B-back design, which was withheld from the PTO entirely. Further, production of these advertising materials demonstrates that Clarin understood that information of functionality was material. As the District Court noted, the failure to produce the patents and the decision "to bury" the information, in light of the acknowledged materiality of the information contained in the patents, illustrates Clarin's intent to deceive the failure to produce the patents.

Fourth, Defendant argues that the false affidavit of Mr. Peterson was not material because functionality of the chair design was not at issue at the time of the submission of the affidavit. Again, Defendant distorts the record. While the PTO in the final rejection found the chair design to be at least *de facto* functional, it did not state that the chair was not *de jure* functional. (A.187). That distinction, although since abandoned, was critical because *de facto* functionality did not bar registration while *de jure* functionality did. Even putting aside the affirmative misstatement that the B-back was a slight

modernization, the failure to disclose the functionality of the B-back shape, leaving the PTO to believe it was merely arbitrary or ornamental, went to the issue of *de jure* functionality. Nothing prevented the PTO from refusing registration on the grounds of *de jure* functionality during the reconsideration.

Further, Defendant's argument that the term "modernize" is susceptible of an interpretation indicating a utilitarian purpose is pure sophistry. The District Court was in the best position to evaluate the meaning and intent of that term. This Court need only compare the true circumstances, collapsing chairs during concerts, to see that the use of the term modernize is clearly misleading. If that was the term purposely used, that is further evidence of Clarin's intent to deceive.

For these reasons, the District Court properly found the existence of materiality.

## D. Clarin Acted With Scienter And Intent.

Defendant argues that the evidence does not support a finding of scienter or intent. Defendant argues that the knowing failure to disclose the patents is not enough to establish intent. As noted above, the District Court closely examined the course of the prosecution of the trademark application. It noted that Clarin, through its counsel, made arguments based upon a partial record that could not be made if the patents had been disclosed. Specifically, Clarin made it seem that the back, frame and legs were merely incidental to the functionality of the design by its limited disclosure of the '958 Patent. To advance that argument before the PTO, while knowing that Clarin's other patents made it clear that the overall arrangement and shape of the chair was an integral part of its functionality, was fraud. Interestingly, Clarin presented no evidence to explain the failure to disclose this vital information the PTO.

Moreover, it was not mere negligence. Mr. Peterson testified that he was aware of the patents and that they "dealt with various pieces of the chair". Yet, they were not disclosed. That is clearly knowing conduct. Moreover, as the District Court explained, the PTO's request was not limited to only patents claiming the overall design of the chair. (A. 33). Thus, the failure to disclose was intentional. The District Court was in the best position to weight the evidence and the credibility of the witnesses. Based upon that assessment, the District Court found intent.

Strangely, Clarin argues that the District Court did not ascribe any intent to any identified individual. Clearly, the record establishes that Mr. Peterson was found to have filed a fraudulent affidavit. Indeed, the District Court focused on the arguments in the responses signed by the counsel for Clarin. (A.154-63; 173-85; and 189-204). The District Court did not merely identify the fraud as being perpetrated by the fictitious entity Clarin. It specifically identified the persons committing the fraud.

Lastly, Defendant argued that Mr. Peterson lacked intent because he relied on Counsel. Nowhere did Mr. Peterson testify to an honest belief that his affidavit was true. He knew it was false and cannot hide behind counsel to excuse the fraudulent nature of the affidavit.

In short, the record supports the finding of fraud. Clarin, through its agents, intentional withheld vital information from the PTO. Defendant deceived the PTO and obtained a trademark. As the District Court noted, the evidence that was withheld from the PTO led the Court to invalidate the trademark. It is inconceivable that the PTO would have ruled differently, if all of the evidence had been presented to it.

## CONCLUSION

25

For the reasons set forth above, the Judgment of the District Court should be

affirmed.

Respectfully submitted,

_____

Anthony DiVincenzo

DiVincenzo Schoenfield Swartzman
33 North LaSalle Street, Suite 2900
Chicago, Illinois 60602
312/334-4800

## CERTIFICATE OF SERVICE

I, Anthony DiVincenzo, an attorney, being duly sworn on oath depose and state that on April 19, 2010, I caused two copies of Brief of Appellee and one copy of a digital media version of the brief to be served upon the parties listed below by U.S. Mail, 33 N. LaSalle, Chicago IL 60602 with proper postage prepaid, on or before the hour of 5:00 p.m.

_____

DiVincenzo Schoenfield Swartzman
33 North LaSalle Street, Suite 2900
Chicago, Illinois 60602
312/334-4800